# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| TODD CHAMBERS, ) | |
| ) | |
| Plaintiff, ) | No. 12 C 9589 |
| ) | |
| v. ) | The Hon. Virginia M. Kendall |
| ) | |
| AVIVA LIFE & ANNUITY CO., AVIVA ) | |
| USA CORP. and WEXFORD AND ) | |
| JAMES, LLC, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Defendants Aviva Life & Annuity Co. and Aviva USA Corp. have moved to compel arbitration of the three claims asserted against them by Plaintiff Todd Chambers pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 4. Separately, Defendant Wexford and James, LLC ("Wexford") moved to compel arbitration of the one claim asserted against it by Chambers. For the reasons set forth below, the Court grants both the Aviva Defendants' and Wexford's motions and dismisses the case with prejudice.

## BACKGROUND

Chambers entered into a Preferred Producer Contract with the Amerus Life Insurance Company under which Amerus gave Chambers authority to serve as its agent to solicit insurance policies, annuity contracts and other products offered by Amerus. In return Chambers received commission compensation for each policy he sold. The Preferred Producer Contract contained a clause that provided that Chambers and Amerus would arbitrate any disputes arising out of or relating to the Contract. (*See* Contract, Doc. 3-1 at 15 ["Except as provided below, you and we agree that any disputes arising out of or relating to this Contact shall be arbitrated in accordance

1

with the Rules of the American Arbitration Association and the Federal Arbitration Code."].) Amerus is owned by the Aviva Defendants and they are considered the same party for purposes of this litigation.

The Aviva Defendants purportedly obtained an errors and omissions policy on Chambers behalf and on January 8, 2006 began to charge Chambers for errors and omissions insurance. Chambers never repaid the Aviva Defendants for the purchase of this policy or any premiums paid on his behalf. Chambers contends that the Contract did not require him to obtain an errors and omissions insurance policy. As a result, the Aviva Defendants initiated a collection action against Chambers. They retained Wexford to collect the debt.

After Wexford attempted to collect the debt from Chambers, Chambers filed the instant action in the Circuit Court of Cook County, Illinois contending that he did not owe the Aviva Defendants any money. His four-count complaint asserted claims against the Aviva Defendants for breach of fiduciary duty, tortious interference with a prospective economic advantage and for a violation of the Illinois Consumer Fraud and Deceptive Practices Act. Chambers also asserted a single claim against Wexford for a violation of the Illinois Consumer Fraud Act. The defendants removed the action to this Court on December 3, 2012 on the basis of diversity of citizenship as established by 28 U.S.C. § 1332. The defendants have now separately moved this Court to compel Chambers to arbitrate his disputes with them pursuant to the arbitration clause in the Contract and the FAA.

## DISCUSSION

The FAA embodies a federal policy broadly favoring arbitration and states, "an agreement in writing to submit to arbitration....shall be valid, irrevocable, and enforceable, save upon grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2

(2006); *see also Shearson/American Express, Inc. v. McMahon,* 482 U.S. 220, 225-26 (1987) (the FAA "establishes a federal policy favoring arbitration [and] requiring that we rigorously enforce agreements to arbitrate") (internal quotations omitted). Congress designed the FAA to govern the "enforcement, validity, and interpretation of arbitration clauses in commercial contracts in both state and federal court." *Jain v. De Mere,* 51 F.3d 686, 688 (7th Cir. 1995). The FAA requires courts to stay or dismiss proceedings and to compel arbitration if an issue in controversy is covered by a valid arbitration agreement. 9 U.S.C. §§3, 4; *AT&T Mobility LLC v. Concepcion,* 131 S. Ct. 1740, 1748 (2011).

Whether the parties agreed to arbitrate a particular issue usually is a question for the court and not the arbitrator to decide. *See AT&T Technologies, Inc. v. Communications Workers of America,* 475 U.S. 643, 649-50 (1986) ("Unless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator."). When petitioning to compel arbitration pursuant to the FAA, the moving party must demonstrate: (1) the existence of a written agreement to arbitrate; (2) that the dispute is within the scope of the arbitration agreement; and (3) that there is a refusal to arbitrate. *Zurich Am. Ins. Co. v. Watts Indus., Inc.,* 417 F.3d 682, 687 (7th Cir. 2005).

I.  **The Aviva Defendants Motion to Compel Arbitration**

Chambers does not dispute that he entered into a contract with the Aviva Defendants with an explicit arbitration provision. He also concedes that he refuses to arbitrate his dispute with the Aviva Defendants. Therefore, the only issue for the Court to resolve with respect to this motion is whether the dispute between Chambers and the Aviva Defendants is within the scope of the arbitration agreement.

3

In determining "whether the parties agreed to arbitrate a certain matter, courts generally should apply ordinary state-law principles that govern the formation of contracts." *First Options of Chi., Inc. v. Kaplan,* 514 U.S. 938, 944 (1995); *see also Gore v. Alltel Communs., LLC,* 666 F.3d 1027, 1032 (7th Cir. 2012) ("To determine whether a contract's arbitration clause applies to a given dispute, federal courts apply state-law principles of contract formation.") (internal citations omitted); *Reliance Ins. Co. v. Raybestos Prods. Co.,* 382 F.3d 676, 678-79 (7th Cir. 2004). If it is clear that the parties executed a contract providing for arbitration of certain issues, disputes regarding the scope of the arbitration clause should be "resolved in favor of arbitration as a matter of federal law." *Gore,* 666 F.3d at 1032 (internal citations omitted). As a result, the Court should not deny a request for arbitration unless the Court can conclusively decide that the dispute is not covered by the arbitration provision. *See id.* ("[A] court may not deny a party's request to arbitrate an issue unless it may be said with positive assurance that the arbitration is not susceptible of an interpretation that covers the asserted dispute.").

In this case, the Contract contains an explicit provision stating that it is governed by Iowa law. (*See* Contract, Doc. 3-1 at 15.) Accordingly, the Court looks to Iowa contract law to determine whether the dispute is covered by the arbitration agreement.[1] Under Iowa law, "[t]he cardinal rule of contract interpretation is to determine what the intent of the parties was at the time they entered into the contract." *Pillsbury Company Inc. v. Wells Dairy, Inc.,* 752 N.W. 2d 430, 436 (Iowa 2008) (citing *Walsh v. Nelson,* 622 N.W.2d 499, 503 (Iowa 2001)). Moreover,

---

[1] Illinois courts enforce governing law provisions in contracts provided that: (1) the contract is valid; (2) the law chosen is not contrary to Illinois's fundamental public policy; and (3) there is some relationship between the chosen law and the parties or transaction. *See Thomas v. Guardmark, Inc.,* 381 F.3d 701, 706 (7th Cir. 2004). These three elements are present here. Even if this Court were to apply Illinois law the result would not be different because: (1) the fundamental rule of Illinois contract interpretation is to determine the intent of the parties at the time they entered the contract; and (2) intent should be determined from what is written within the four corners of the contract provided the contract is facially unambiguous and fully integrated. *See Virginia Sur. Co., Inc. v. Northern Ins. Co. of New York,* 224 Ill. 2d 550, 556 (Ill. App. Ct. 2007); *TAS Distributing Co., Inc. v. Cummins Engine Co., Inc.,* 491 F.3d 625, 636 (7th Cir. 2007) (internal citations and quotations omitted).

4

while Iowa law allows for the use of extrinsic evidence to aid in the interpretation of a contract, the Iowa Supreme Court has directed that "the words of the agreement are still the most important evidence of the party's intentions at the time they entered into the contract." *Id.*

The arbitration clause at issue here states in relevant part that "[e]xcept as provided below, you and we agree that any disputes arising out of or relating to this Contract shall be arbitrated in accordance with the Rules of the American Arbitration Association and the Federal Arbitration Code." (*See* Contract, Doc. 3-1 at 15.) The use of the phrase "arising out of" means that this agreement covers "all disputes having their origin or genesis" in the Contract, not just disputes implicating the interpretation or performance of the contract. *Gore,* 663 F. 3d at 1033 (quoting *Sweet Dreams Unlimited, Inc. v. Dial-A-Mattress Int'l, Ltd.,* 1 F.3d 639, 642 (7th Cir. 1993)). This phrase "creates a presumption of arbitrability." *Id.* (internal citations and quotations omitted). Doubts regarding whether an issue is susceptible to arbitration "should be resolved in favor of arbitration." *Id.* (internal citations and quotations omitted).

In this case, Chambers asserted claims against the Aviva Defendants for breach of fiduciary duty, tortious interference with a prospective business relationship and consumer fraud. All of these claims arise out of or relate to the Preferred Producer Contract executed by and between Chambers and the Aviva Defendants. The crux of Chambers's case is that the contract he entered into with the Aviva Defendants did not require him to purchase errors and omissions insurance. The Aviva Defendants then purchased a policy on Chambers's behalf, charged Chambers for the purchase and then allowed the balance Chambers owed them to accrue interest without informing Chambers that the balance was overdue. As a result, all of Chambers's claims arise out of or relate to the Preferred Producer Contract because they all hinge on whether Chambers was required to obtain errors and omissions insurance under the terms of the Preferred

5

Producer Contract. *See, e.g., Gore,* 666 F.3d at 1036 (holding that Illinois Consumer Fraud and Deceptive Practices Act claim was subject to arbitration clause because it arose out of the subject matter of the arbitration clause); *Kiefer Specialty Flooring, Inc. v. Tarkett, Inc.,* 174 F.3d 907, 909-10 (7th Cir. 1999) (holding that tortious interference claim was arbitrable because it had a significant relationship to the contract containing the arbitration clause). Therefore, the Aviva Defendants' motion is granted.

## II.     Wexford & James LLC's Motion to Grant Arbitration

The Court also grants Wexford's motion to compel Chambers to arbitrate his consumer fraud claim against them pursuant to the arbitration provision in the Contract. Wexford was not a signatory to this contract. State contract law governs the ability of non-signatories to enforce arbitration provisions. *See Arthur Andersen LLP v. Carlisle,* 556 U.S. 624, 630-31 (2009); *see also Donaldson Co. v. Burroughs Diesel, Inc.,* 581 F.3d 726, 732 (8th Cir. 2009). The Iowa Supreme Court has not specifically addressed the question of whether a non-signatory can enforce an agreement to arbitrate; however, federal courts applying Iowa law have repeatedly concluded that Iowa Supreme Court would allow non-signatories to enforce agreements to arbitrate when: (1) "the relationship between the signatory and the non-signatory defendants is sufficiently close that only by permitting the non-signatory to invoke arbitration may evisceration of the underlying arbitration agreement between the signatories be avoided"; and (2) "when the signatory to a written agreement containing an arbitration clause must rely on the terms of the written agreement in asserting its claims against the non-signatory." *CD Partners, LLC v. Grizzle,* 424 F.3d 795 (8th Cir. 2005) (internal citations and quotations omitted); *see also PRM Energy Sys., Inc. v. Primenergy, L.L.C.,* 592 F.3d 830, 834 (8th Cir. 2010) (applying the *CD Partners* analysis and stating "we note that a nonsignatory may compel a signatory to

6

arbitrate claims in limited circumstances"); *Wells Enterp., Inc. v. Olympic Ice Cream,* No. 11 C 4109, 2012 WL 5208681, at *9 (N.D. Iowa Oct. 22, 2012) (predicting that the Iowa Supreme Court would adopt the reasoning of *CD Partners*). Intermediate Iowa appellate courts have also held that a non-signatory could compel arbitration against a signatory to an arbitration agreement. *See DB Acoustics v. Great River Contractors, L.L.C.,* No. 09-1260, 2010 WL 1375319, at *2-3 (Iowa Ct. App. Apr. 8, 2010). Accordingly, a non-signatory can enforce an agreement to arbitrate under Iowa law in the circumstances described in *CD Partners*.

In this case, the relationship between the signatory defendants, the Aviva Defendants, and non-signatory defendant Wexford is sufficiently close for Wexford to enforce the arbitration agreement. The Aviva Defendants retained Wexford to collect the debt allegedly owed to them by Chambers. As a result, Wexford acted as the Aviva Defendants' agent in attempting to collect the debt. Courts have found that "[w]here the parties to [an arbitration] clause unmistakably intend to arbitrate all controversies which arise between them, their agreement should be applied to claims against agents or entities related to the signatories." *Pritzker v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 7 F.3d 1110, 1122 (3d. Cir. 1993); *see also Nesslage v. York Secur., Inc.,* 823 F.2d 231, 233-34 (8th Cir. 1987); *Nitro Distrib., Inc., v. Alticor, Inc.,* 453 F.3d 995, 999 (8th Cir. 2006); *Morrow v. Soeder,* No. 06 C 1243, 2006 WL 2855024, at *2 (E.D. Mo. Oct. 3, 2006) (holding that a debt collector may enforce the arbitration agreement against signatory plaintiff where dispute between debt collector and plaintiff arose out debt collector's attempts to collect debt on behalf of the signatory principal). In other words, a non-signatory agent and a signatory principle have a sufficiently close relationship to permit the non-signatory agent to invoke arbitration provided that the dispute is covered by the arbitration clause. Therefore, since Chambers and the Aviva Defendants agreed to arbitrate all disputes that

arose between them, Wexford is the Aviva Defendants' agent, and the dispute between Chambers and Wexford arose out of Wexford's attempt to collect a debt from Chambers on behalf of the Aviva Defendants, Wexford may enforce the arbitration agreement against Chambers. Accordingly, Wexford's motion to compel arbitration is granted.

### III.     The Case Should Be Dismissed Not Stayed

The FAA provides that once the Court determines that arbitration should be compelled, the Court "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration." 9 U.S.C. § 3. Pursuant to this provision, all of the defendants requested this Court to stay the case pending arbitration of Chambers's claims. However, the Court finds that dismissal of the case, and not a stay, is the proper remedy in this case.

The Seventh Circuit has not ruled specifically on the issue but a number of circuits have found that there is "a judicially-created exception to the general rule which indicates district courts may, in their discretion dismiss an action rather than stay it where it is clear the entire controversy between the parties will be resolved by arbitration." *Green v. SuperShuttle Int'l, Inc.,* 653 F.3d 766, 769-70 (8th Cir. 2011); *see also Soto-Fonalledas v. Ritz-Carlton San Juan Hotel Spa & Casino,* 640 F.3d 471, 473 (1st Cir. 2011); *Ozormoor v. T-Mobile USA, Inc.,* 354 F. App'x 972, 975 (6th Cir. 2009); *Poteat v. Rich Prods. Corp.,* 91 F. App'x 832, 835 (4th Cir. 2004); *Fedmet Corp. v. M/V BUYALYK,* 194 F.3d 674, 678 (5th Cir. 1999).

Moreover, a number of courts within this district have found that the Seventh Circuit would recognize this judicially-created exception. *See, e.g., Johnson v. Orkin, LLC*, No. 12 C 141, 2013 WL 828506, at *15 (N.D. Ill. Mar. 6, 2013); *Denari v. Rist,* No. 10 C 2704, 2011 WL

8

332543, at *11 (N.D. Ill. Mar. 24, 2011); *Reineke v. Circuit City Stores, Inc.,* No. 03 C 3146, 2004 WL 442639, at *5 (N.D. Ill. Mar. 9, 2004); *Dalope v. United Health Care of Ill.,* No. 03 C 8918, 2004 WL 2325688, at *2 (N.D. Ill. Oct. 8, 2004). Indeed, the Seventh Circuit has repeatedly affirmed district courts' decisions to dismiss suits where all claims are arbitrable. *See, e.g., Baumann v. Finish Line, Inc.,* 421 F. App'x 632, 636 (7th Cir. 2011); *Am. Int'l Specialty Lines Ins. Co. v. Elec. Data Sys. Corp.,* 347 F.3d 665, 668 (7th Cir. 2003); *McCaskill v. SCI Mgmt. Corp.,* 298 F.3d 677, 679 (7th Cir. 2002). Therefore, this Court finds that the case should be dismissed and not stayed because all of the claims are arbitrable.

## **CONCLUSION**

For the reasons set forth above both the Aviva Defendants' and Wexford's Motions to Compel Arbitration are granted and the case is dismissed.

_____
Virginia M. Kendall
United States District Court Judge
Northern District of Illinois

Date: March 26, 2013

9